# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 77708-4-I |
|---|---|
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JEREMEY TAYLOR BRYCE, | |
| Respondent. | FILED: June 10, 2019 |

APPELWICK, C.J. — Bryce appeals his conviction for second degree child molestation. He argues that the State failed to prove beyond a reasonable doubt that he had sexual contact with M.M. He also contends that two community custody conditions are unconstitutionally vague. We affirm, but remand to the trial court to correct a scrivener's error in Bryce's judgment and sentence.

## FACTS

Brianne Lein started dating Jeremey Bryce when her daughter, M.M., was nine. Bryce was 21 at the time. Soon after they started dating, Bryce moved in with Lein. Lein lived with M.M. and her son, L.M.

Lein noticed that M.M.'s relationship with Bryce became strained when M.M. entered middle school. Lein was working full time, and Bryce worked off and on. He had trouble holding a job for more than three to six months at a time, which caused tension between him and Lein. Bryce often stayed home with the kids, and would spend time in the garage.

When M.M. was 14, she went to a weeklong church camp with a friend. During a small group session, M.M. became very emotional. After the session, her cabin leader, Christy Hilderbrand, pulled her aside and asked if she was okay. M.M. started talking about her family life, and told Hilderbrand that she was sexually abused. Hilderbrand told the youth pastor at the camp about what M.M. had said. The youth pastor then contacted the police.

About two or three days after M.M. got home from camp, the police arrived at her house. They tried talking to her about what she had told Hilderbrand. M.M. told the police that something had happened, but did not give any details. She later told Paula Newman-Skomski, a forensic nurse examiner, that Bryce touched her over and under her clothes, and made her "'touch him in his crotch area over and under his clothes.'" She also participated in a forensic interview, where she provided more details about what happened between her and Bryce.

The State charged Bryce with one count of first degree child molestation, and two counts of second degree child molestation. At trial, M.M. detailed three separate instances of sexual abuse by Bryce.

First, M.M. testified that, when she was between fifth and sixth grade, Bryce called her into the garage. Bryce was seated on a couch, in his pajamas, covered with a blanket. When M.M. entered the garage, he told her to sit down on the couch and move closer to him, which she did. He then picked her up and placed her on his lap, so that her back was facing his stomach. He grabbed her wrists, put them behind her back, and "pressed them against his crotch." M.M. testified

that Bryce pressed both of her hands against his penis, which she could "kind of feel" through the blanket, and held them there for about one to five minutes.

Second, M.M. testified that, almost a year later when she was 12, Bryce called her into the garage. He was sitting on the couch, covered with a blanket, and had pajama pants on. Once M.M. was in the garage, he called her over to sit down on the couch. He then asked her to move closer to him, which she did. He again pulled her onto his lap, took her wrists, used them to help pull up the blanket, and put her hands underneath the blanket. M.M. testified that, at this point, she could feel Bryce's penis through his pajamas. She also testified that she was not sure if she could feel his penis, but that her hands were in the crotch area of his pants. Bryce held her hands there for about 5 to 10 minutes.

Last, M.M. testified that, when she was 12 or 13, Bryce again called her into the garage. He had a blanket on his lap, and asked her to come sit down on the couch and talk with him. Once she sat down, he asked her to move closer to him, which she did. He then pulled her onto his lap, grabbed her wrists, put them under the blanket, put her hands on his penis, and moved her hands up and down. Bryce was not wearing pants or underwear. This lasted for about 10 minutes.

A jury found Bryce guilty as charged. At sentencing, the trial court imposed several community custody conditions. Bryce appeals.

## DISCUSSION

Bryce makes two arguments. First, he argues that the State failed to prove beyond a reasonable doubt that he had sexual contact with M.M. Second, he argues that the community custody conditions prohibiting him from (1) entering

3

areas where children regularly congregate and (2) possessing or accessing depictions of minors engaged in sexually explicit conduct are unconstitutionally vague.

## I. Sufficiency of Evidence

Bryce argues that there is insufficient evidence that he had sexual contact with M.M., an element of second degree child molestation as charged in count two. Specifically, he asserts that M.M.'s testimony about the second instance of sexual abuse fails to establish sexual contact.

The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997).

To convict Bryce of second degree child molestation as charged in count two, the State had to prove beyond a reasonable doubt that "on a specific date on or about the 6th day of October, 2011 through on or about the 5th day of October, 2013, on an occasion separate and distinct from the conduct alleged in Count 3,

[Bryce] had sexual contact with [M.M.]." "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). To prove sexual contact, "the State must establish the defendant acted with a purpose of sexual gratification." State v. Stevens, 158 Wn.2d 304, 309, 143 P.3d 817 (2006).

Sexual contact includes touching "that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." State v. Jackson, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). "The statute defining 'sexual contact' makes no distinction between the victim's intimate parts being touched by the accused or the accused's intimate parts being touched by the victim." Id. "The touching may be made through clothing between the accused and the victim." Id. (footnote omitted). In determining whether this element has been satisfied, we look to the totality of the facts and circumstances presented. State v. Harstad, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

Bryce argues that M.M.'s touching of the outside of his pajamas was not sexual contact as required for second degree child molestation. He contends that, while M.M.'s testimony establishes she touched him, "it wholly fails to establish she touched his sexual or intimate parts." He points to the following testimony:

Q.   So I want to talk now a little bit about -- oh, and I think you had said that you could feel through the clothes his penis; is that correct? I think you told that to Mr. Langbehn. Did I get that wrong?

A.   I mean, it depends on which occasion you're talking about.

Q.    The middle one.

A.    The middle one. I might have. I could have just been guessing as to what was there, though. It's . . .

Q.    So you think it's possible you didn't?

A.    It's possible but unlikely, [because] there's not much else there other than his legs.

M.M. was previously asked what she could feel with her hands on this occasion. She responded, "I could feel [Bryce's] penis through his pajamas." She was also asked if she was sure that she could feel his penis, and responded, "No." She stated that she could feel "[t]he seams of the pajama pants and where they meet at the crotch of your pants, the bend there." She testified that Bryce held her hands there for about 5 to 10 minutes.

A jury could infer that what M.M. described Bryce doing with her hands was consistent with using her for the purpose of sexual gratification. She testified that he held her hands in the crotch area of his pants for about 5 to 10 minutes. Under these circumstances, "a person of common intelligence could fairly be expected to know that . . . the parts touched were intimate and therefore the touching was improper." Jackson, 145 Wn. App. at 819. Although M.M.'s testimony that she could feel Bryce's penis conflicts with her testimony that she might not have felt his penis, we defer to the trier of fact on issues of conflicting testimony and witness credibility. Hernandez, 85 Wn. App. at 675. Viewed in the light most favorable to the State, the evidence is sufficient to prove that Bryce had sexual contact with M.M.[1]

_____

[1] In a statement of additional grounds, Bryce makes two arguments relating to the sufficiency of the evidence. First, he argues that M.M.'s testimony

II. <u>Community Custody Conditions</u>

Bryce argues second that the community custody conditions prohibiting him from (1) entering areas where children regularly congregate and (2) possessing or accessing depictions of minors engaged in sexually explicit conduct are unconstitutionally vague.

Under the due process clause, a prohibition is void for vagueness if (1) it does not provide ordinary people fair warning of the proscribed conduct, and (2) it does not have standards that are definite enough to protect against arbitrary enforcement. <u>See</u> <u>State v. Irwin</u>, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). "Unconstitutional vagueness" means that persons of ordinary intelligence must guess as to the proscribed conduct. <u>City of Spokane v. Douglass</u>, 115 Wn.2d 171, 179, 795 P.3d 693 (1990). If persons of ordinary intelligence can understand what the condition proscribes, notwithstanding some possible areas of disagreement, the condition is sufficiently definite. <u>See</u> <u>State v. Bahl</u>, 164 Wn.2d 739, 754, 193 P.3d 678 (2008). We review community custody conditions for abuse of discretion and will reverse them if they are manifestly unreasonable. <u>State v. Sanchez Valencia</u>, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

---

contradicts statements she previously made under oath, including that the reason for her allegations was that she wanted Bryce out of the house and that she regularly takes drama classes. He does not provide a citation to these statements in the record. But, even if M.M.'s testimony contradicts statements she previously made under oath, we must defer to the trier of fact on issues of conflicting testimony and witness credibility. <u>Hernandez</u>, 85 Wn. App. at 675. Second, Bryce asserts that, because there is no physical evidence of his sexual contact with M.M., the required elements of child molestation have not been met for all three counts. But, no Washington authority requires physical evidence to convict a defendant of child molestation. Bryce does not cite any other authority to support his assertion. Accordingly, Bryce's arguments fail.

A. Condition 6

Bryce argues that condition 6, which bars him from entering locations where minors are known to congregate, is unconstitutionally vague because it is vulnerable to arbitrary enforcement.

Condition 6 provides,

Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by [the Department of Corrections] or CCO [(community corrections officer)].[2]

It also states that "[c]hanges to the list must include notice to the defendant ahead of time."

Bryce likens this case to Irwin. There, the community custody condition at issue provided, "'Do not frequent areas where minor children are known to congregate, as defined by the supervising CCO.'" Irwin, 191 Wn. App. at 652. It did not include an illustrative list of prohibited locations. Id. at 655. This court struck the condition as being void for vagueness. Id. It noted,

It may be true that, once the CCO sets locations where "children are known to congregate" for Irwin, Irwin will have sufficient notice of what conduct is proscribed. But, although that would help the condition satisfy the first prong of the vagueness analysis, it would leave the condition vulnerable to arbitrary enforcement. The potential for arbitrary enforcement would render the condition unconstitutional under the second prong of the vagueness analysis.

Id. (footnote and internal citations omitted).

---

[2] A handwritten addendum also indicates that Bryce is prohibited from entering amusement parks, corn mazes, and toy departments.

Unlike Irwin, condition 6 includes an illustrative list of prohibited locations where children are known to congregate. And, it provides that any changes to the list must include notice to Bryce ahead. Still, Bryce contends that, because the condition encompasses a wide range of locations, it does not provide ascertainable standards of guilt to protect against arbitrary enforcement.

This court has held that a condition that states, "'Do not enter any parks, playgrounds, or schools where minors congregate,'" is not unconstitutionally vague or void for vagueness. State v. Norris, 1 Wn. App. 2d 87, 96, 404 P.3d 83 (2017), rev'd on other grounds, State v. Hai Minh Nguyen, 191 Wn.2d 671, 425 P.3d 847 (2018). Condition 6 is consistent with that level of detail. The phrase "areas where children's activities regularly occur or are occurring" in the first sentence modifies the illustrative list of prohibited locations in the second sentence. Bryce does not argue that any particular word or phrase in the condition is unclear. Thus, the language is specific enough so that a person of ordinary intelligence can understand which locations Bryce is prohibited from entering.

If persons of ordinary intelligence can understand what the condition proscribes, the condition is sufficiently definite. See Bahl, 164 Wn.2d at 754. Accordingly, condition 6 is sufficiently definite to protect against arbitrary enforcement, and is not unconstitutionally vague.

B. Condition 7

Bryce argues that condition 7, which prohibits him from possessing or accessing depictions of minors engaged in sexually explicit conduct, is unconstitutionally vague because it cites a statute that does not exist. He also

asserts that it provides no ascertainable standards to guard against discriminatory and arbitrary enforcement.

Condition 7 provides, "Do not possess or access depictions of minors engaged in sexually explicit conduct, as defined by RCW 9.68.011." The State concedes that this condition "contains a clear scrivener's error," in that "sexually explicit conduct" is defined by RCW 9.68A.011, not RCW 9.68.011. Bryce does not address this concession.

RCW 9.68A.011(4) defines "'[s]exually explicit conduct'" as "actual or simulated":

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
>
> (b) Penetration of the vagina or rectum by an object;
>
> (c) Masturbation;
>
> (d) Sadomasochistic abuse;
>
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
>
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
>
> (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

The language of the statute is specific enough so that a person of ordinary intelligence can understand which materials Bryce is prohibited from accessing or

possessing. Bryce does not argue otherwise. Accordingly, we accept the State's concession and remand to the trial court to correct condition 7 to read, "as defined by RCW 9.68A.011."

We affirm, but remand to the trial court to correct a scrivener's error in Bryce's judgment and sentence.

Appelwick, CJ

WE CONCUR:

Mann, A.C.J.

Dwyer, J.